

**U.S. Department of Justice**

Criminal Division

Appellate Section                                          Washington, D.C. 20530

May 31, 2024

**VIA ECF**

The Honorable Lyle W. Cayce, Clerk of Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, Louisiana 70130-3408

**Re: *United States v. Edgar Hermosillo Minor*, No. 22-51083 – ORAL ARGUMENT HELD IN NEW ORLEANS ON NOVEMBER 8, 2023 (RICHMAN, C.J., HAYNES, DUNCAN, J.J.)**

Dear Mr. Cayce:

      The government respectfully submits this letter brief in response to the Court's May 24 directive requesting the parties to address whether and to what extent the Supreme Court's opinion in *Brown v. United States*, No. 22-6389, 2024 WL 2333428 (U.S. May 23, 2024), affects the outcome of this case.

### I. Background

      *Brown* and its companion case *Jackson v. United States*, No. 22-6640, involved two defendants who were convicted of federal firearm offenses and received statutory minimum sentences under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1).[1] In relevant part, the ACCA's statutory minimum sentence applies if a defendant has "three previous convictions" for a "serious drug offense." 18 U.S.C. § 924(e)(1). The statute defines a "serious drug offense" to include an offense under state law involving the manufacture,

---

[1] The Supreme Court consolidated *Brown* and *Jackson* and issued a single opinion deciding both cases. Consistent with this Court's order, this letter brief refers to the consolidated decision as "*Brown*."

distribution, or possession of a "controlled substance … as defined" by the Controlled Substances Act (CSA). 18 U.S.C. § 924(e)(2)(A)(ii).

The petitioners in *Brown* argued that their prior state drug crimes, which involved marijuana and cocaine, should not qualify as serious drug offenses because, although those drugs were listed as controlled substances under the CSA when the petitioners possessed and trafficked them, the federal definitions of marijuana and cocaine were later modified so that the state drug schedules were no longer a categorical match to the federal CSA. For Brown, Congress had exempted some hemp from the federal definition of marijuana while his federal firearm charges were pending, see Pub. L. No. 115-334, § 12619(a)(2), 132 Stat. 4490, 5018 (2018), so he argued that the relevant comparator for his Pennsylvania marijuana conviction was the federal drug schedule in effect at the time of his federal sentencing. For Jackson, the federal government had legalized a radioactive cocaine derivative called Ioflupane before he committed his federal firearm offense, see 80 Fed. Reg. 54717 (Sept. 11, 2015), so he argued that the relevant comparator for his Florida cocaine offense was the federal drug schedule in effect when he committed the federal firearm offense. The Supreme Court rejected those arguments and directed sentencing courts applying § 924(e)(1) to ask whether the drug underlying a defendant's prior conviction was a controlled substance under the CSA at the time the defendant committed that prior drug offense, and not when he committed, or was being sentenced for, the more recent federal firearm offense. *See Brown*, 2024 WL 2333428, at *3.

This case raises a similar question under the Sentencing Guidelines. Under Guidelines § 4B1.1(a), a defendant is a career offender if, as relevant here, he has "two prior felony convictions" for either a crime of violence or a "controlled substance offense." The term "controlled substance offense" means an offense under federal or state law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance. U.S.S.G. § 4B1.2(b)(2).[2] Minor argues that, in sentencing him in 2022 for importing and possessing methamphetamine and fentanyl, the district court was wrong to apply U.S.S.G. § 4B1.1's "career-offender" enhancement because it mistakenly viewed his prior federal marijuana crimes as "prior felony convictions of … a controlled substance offense." U.S.S.G. § 4B1.1(a). Specifically, Minor

---

[2] Under this Court's precedent, the Guidelines' use of "controlled substance" refers to a substance "covered by the CSA." *United States v. Gomez-Alvarez*, 781 F.3d 787, 794 (5th Cir. 2015).

contends (in the same vein as had the *Brown* petitioners), that his prior marijuana convictions do not qualify as "controlled substance offense[s]" because even though marijuana was a controlled substance under the CSA at the time he committed his prior offenses, the federal definition of marijuana had been modified to exclude hemp by the time of his methamphetamine- and fentanyl-related sentencing in 2022. *See* Br. 2 (urging this Court to "[a]pply[]" a "time-of-sentencing" interpretation of § 4B1.1). The Supreme Court's reasoning in *Brown*, however, casts doubt on each of the three primary bases on which Minor's time-of-sentencing argument relies and instead strongly supports a time-of-prior-offense view of Section 4B1.1. Accordingly, because the district court here relied on a time-of-prior offense view of Section 4B1.1 in applying the "career-offender" enhancement to Minor's sentence, this Court should affirm.

## II.  *Brown* Supports a Time-of-Prior-Offense Approach

To be sure, although it rejects a time-of-sentencing view of the ACCA, *Brown* leaves open the possibility that a different approach could theoretically apply under the Guidelines. For instance, in *Brown*, the petitioner (Brown) advocated for adopting a time-of-sentencing rule for the ACCA by referring to the "ordinary practice" of applying Guideline sentence enhancements as they exist at sentencing. *Brown*, 2024 WL 2333428 at *10 n.7. In dismissing that argument, the Court observed that while Congress has directed courts to "apply the Guidelines 'in effect on the date the defendant is sentenced,'" *id.* (quoting 18 U.S.C. § 3553(a)(4)(A)(ii)), it has not issued any similar directive in the ACCA.

That distinction, however, does not resolve this appeal. As the government has argued throughout this case, and as multiple courts of appeals have explained, that § 3553(a)(4)(A)(ii) requires district courts "to apply the Guidelines as they existed at the time of [a defendant's] federal sentencing sheds no light on what the applicable Guideline means by 'controlled substance.'" *United States v. Lewis*, 58 F.4th 764, 772-773 (3d Cir. 2023); *United States v. Clark*, 46 F.4th 404, 411 (6th Cir. 2022) ("Accepting that a sentencing court applies the currently effective Guidelines … leaves unanswered the definitional question: what the term 'controlled substance' means at sentencing."). Put in terms of this case, the parties agree that under § 3553(a)(4)(A)(ii), the district court was required to apply the version of Section 4B1.1 in effect at the time of Minor's sentencing. But all that means is

that the district court needed to ask whether Minor "has at least two prior felony convictions of … a controlled substance offense." U.S.S.G. § 4B1.1. This appeal concerns a subsequent question: *how* to determine whether Minor has two prior felony convictions of controlled substance offenses, or what those terms mean. Section 3553(a)(4)(A)(ii) does not answer that question. But for the reasons described below, as well as those put forward by the government in its brief and at oral argument, this Court should hold that Minor's prior marijuana convictions are "controlled substance offenses" under the Guidelines because his prior crimes categorically matched the federal CSA at the time they were committed.

*Brown* provides several reasons for why the ACCA requires a time-of-prior-offense rule. Those same reasons also support adopting a time-of-prior-offense rule in the Guidelines context and in turn counsel against each of the main reasons that Minor offers in favor of a time-of-sentencing rule.

First, Minor contends that because "the Guidelines' definition of 'controlled substance' incorporates the CSA," the term must "refer to the federal drug schedules" (promulgated pursuant to the CSA) that are in place "at the time of sentencing." Br. 14; see *id.* at 12-15, 16-17. He supports that contention by referencing an ACCA decision from the Eighth Circuit, which states that "whether a prior conviction involves a 'controlled substance' for purposes of a sentencing enhancement only 'becomes salient at the time of sentencing'—not before." Br. 14 (quoting *United States v. Perez*, 46 F.4th 691, 699 (8th Cir. 2022)). The Court in *Brown*, however, rejected that argument and abrogated *Perez*. Jackson had argued that sentencing courts should refer to the drug schedules in place at the time of his firearm offense, rather than his prior drug crimes, because "the first time a question arises under ACCA is when a person commits a federal firearm offense." *Brown*, 2024 WL 2333428 at *8-*9 (brackets and internal quotation marks omitted). But the Court disagreed, explaining that "ACCA's cross-reference" is "best read[]" as meaning "that a prior state drug conviction constitutes an ACCA predicate if the drugs on the federal and state schedules matched when the state drug offense was committed." *Brown*, 2024 WL 2333428, at *9. That "best reading," the Court explained, resulted from the ACCA's language and purpose and the Court's precedent interpreting the statute. *Id.* As the Court explained, because the ACCA "refers to 'previous convictions'" and "is concerned with recidivism," and because Congress "clearly indicated that past conduct that violated the CSA is probative of a defendant's 'culpability and

dangerousness,'" *id.* at 6 & n.4 (quoting *McNeill v. United States*, 563 U.S. 816, 823 (2011)), sentencing courts must look back to the federal drug schedules at the time the defendant committed his predicate offense. *Id.*

Minor's reading of the Guidelines fails for much the same reason. Like the ACCA, which refers to "previous convictions," Section 4B1.1 defines a defendant as a career offender if he "has at least two prior felony convictions of ... a controlled substance offense." U.S.S.G. § 4B1.1(a). Moreover, Section 4B1.2 clarifies that the term "'two prior felony convictions' means ... the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of ... a controlled substance offense." U.S.S.G. § 4B1.2(c); *see* U.S. Br. 12. As the Sixth Circuit thus said in addressing the precise question before this Court, "[t]he words 'prior' and 'subsequent to' direct the court's attention to events that occurred in the past," "indicat[ing] that the court should take a backward-looking approach and assess the nature of the predicate offenses at the time the convictions for those offenses occurred." *Clark*, 46 F.4th at 409. In addition, like the ACCA, Section 4B1.1 is concerned with recidivism. *See United States v. Anderson*, 591 F.3d 789, 790 (5th Cir. 2009) (per curiam); *see also Clark*, 46 F.4th at 411-412 (Section 4B1.1, as a recidivism enhancement, is "intended to deter future crime by punishing those future crimes more harshly if the defendant has committed certain prior felonies."); *United States v. Rodriquez*, 553 U.S. 377, 385 (2008) ("[A] second or subsequent offense is often regarded as more serious because it portends greater future danger and therefore warrants an increased sentence for purposes of deterrence and incapacitation."). *Brown*'s reasoning thus applies equally to the Guidelines context, and this Court should hold that Minor's prior marijuana offenses are "controlled substance offenses" based on the federal drug schedules at the time those prior offenses were committed.

Second, Minor asserts that a "time-of-sentencing rule also makes sense because the CSA's drug schedules, 'by design, change over time,'" and are "evolutionary in nature," making it "illogical to conclude that federal sentencing law attaches culpability and dangerousness to an act that, at the time of sentencing, Congress had concluded is *not* culpable and dangerous." Br. 15-16 (quoting *United States v. Abdulaziz*, 998 F.3d 519, 523 (1st Cir. 2021), U.S.S.G. § 1A.2, and *United States v. Bautista*, 989 F.3d 698, 703 (9th Cir. 2021)). *Brown* disfavors that argument. Because "a defendant's 'history of criminal activity' does not 'cease to exist' merely because the crime was later redefined," *Brown*, 2024 WL 2333428, at * 7 (quoting *McNeill*, 563 U.S. at 823), the Court explained, "[i]t ... makes sense to ask ... whether a prior offense met

ACCA's definition of seriousness—and thus suggested future danger—at the time it was committed." *Id.* In other words, "[a] prior drug conviction" "augurs a risk of future dangerousness even if the drug is no longer considered dangerous" "because the conviction reveals that the defendant previously engaged in illegal conduct that created a dangerous risk of violence, either with law enforcement or with others operating in the same illegal field." *Id.* Thus, "[i]f left at large," defendants with prior drug offenses "present a serious risk to public safety." *Id.* Indeed, *Brown* specifically addressed situations, like here, where a law under which a defendant was convicted is "later amended or eliminated," and noted that such convictions still serve as "evidence that [the defendant] may continue to 'commit a large number of fairly serious crimes as their means of livelihood' in the future," *id.* (quoting *Wooden v. United States*, 595 U.S. 360, 375 (2022)).

Third, Minor urges this Court to ignore the Supreme Court's decision in *McNeill*, labeling it as "irrelevant to the issue here of which version of the CSA a court should compare [Minor's] prior offense[s] to." Br. 18; see *id.* at 17-19. But *Brown* relies on *McNeill* to affirm the principle that recidivist sentencing enhancements in general require a "backward-looking" examination of a defendant's criminal history. *Brown*, 2024 WL 2333428 at *6; *see also United States v. Garza*, 93 F.4th 913, 918-919 (5th Cir. 2024) (per curiam) (employing a backward-looking approach under 21 U.S.C. § 841(b)(1)(D) to determine whether a prior conviction is a "felony drug offense."). Further, *Brown* endorses *McNeill*'s teaching that, "even if the federal drug schedule is later amended," a defendant's "past conduct that violated the CSA is probative of [his] 'culpability and dangerousness.'" *Id.* at *6 (quoting *McNeill*, 563 U.S. at 823). And perhaps most importantly, *Brown* emphasizes how *McNeill*'s time-of-the-predicate-offense rule derived from two components of ACCA: its language (which refers to "previous convictions") and its purpose ("concerned with recidivism")—both of which Section 4B1.1 shares, as it too refers to "prior convictions" and is likewise a recidivism enhancement. *See supra* at 4; *Brown*, 2024 WL 2333428 at *6 n.4; *see also Clark*, 46 F.4th at 409 (finding *McNeill* instructive to interpreting & 4B1.1 because the ACCA and the Guidelines both "involve recidivism enhancements, which by nature concern a defendant's past conduct."); *Lewis*, 58 F.4th at 771-772 (*McNeill*'s "reasoning is persuasive" and supports applying a time-of-predicate-offense interpretation, rather than a time-of-sentencing view, of § 4B1.1).

*Brown* also speaks to the absurd consequences that a time-of-sentencing approach could produce. *Brown* observes that, under such an approach, "co-

defendants who committed the same [predicate] offense on the same days and likewise committed the felon-in-possession offense at the same time" could receive "very different sentences" if one happened to be "sentenced on December 19, 2018, one day before" the federal drug schedules were amended, "and the other was sentenced on December 21, the day after" the amendment took place. *Brown*, 2024 WL 2333428, at *6. In that scenario, even though both defendants committed precisely the same misconduct at the same time, the first defendant would receive the ACCA's mandatory minimum sentence while the second would not, directly contradicting 18 U.S.C. § 3553(a)(6)'s instruction to "sentencing courts" to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Brown*, 2024 WL 2333428, at *6. As several of the panel's questions at oral argument in this case recognized, applying the time-of-sentencing rule here could lead to equally irrational results. Under that view, if two defendants, A and B, committed the same predicate marijuana offenses and the same methamphetamine and fentanyl offenses on the same dates, but A was sentenced on December 19 and B on December 21, only A would be deemed a "career offender" under § 4B1.1. And that would be true even though the Sentencing Commission had not amended the career-offender Guideline during that time. Certainly, a significant sentencing enhancement ought not to turn on such an arbitrary basis.

## CONCLUSION

For the foregoing reasons, and those detailed in the government's brief and at oral argument, the judgment should be affirmed.

May 31, 2024                         Respectfully submitted,

/s/ Ethan A. Sachs
Ethan A. Sachs
Criminal Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., NW, Rm. 1264
Washington, DC 20530
(202) 353-1028
ethan.sachs@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that, on May 31, 2024, I filed the foregoing letter with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all registered users.

                                <u>/s/ Ethan A. Sachs</u>
                                Ethan A. Sachs
                                Criminal Division, Appellate Section
                                U.S. Department of Justice
                                950 Pennsylvania Ave., NW, Rm. 1264
                                Washington, DC 20530
                                (202) 353-1028
                                ethan.sachs@usdoj.gov